Good morning, Your Honors. Before I begin, I'd like to request three minutes of my time. Before you begin, please identify yourself for the record. Yes, sir. My name is Alana Clare, and I'm here on behalf of the petitioner, Ms. Guiying Chen. I'd like to reserve three minutes of my time for rebuttal. Just watch the clock, Counsel. Yes, sir. Ms. Chen arrived in this country via visa, legally, and sought asylum and withholding of removal on the grounds that she had suffered religious persecution. She did this before her visa expired. The facts in support of her religious persecution claim are compelling, and they are undisputed. At her hearing in 2008, Ms. Chen raised an additional ground, political opinion based on her opposition to China's one-child policy. Although the immigration judge and the Board of Immigration Appeals determined that Ms. Chen was not credible, their decision was not supported by substantial evidence. This is because, first, it's not clear from the record whether Ms. Chen testified inconsistently. However, even if she had, the evidence on which the BIA relied is so manifestly trivial that it cannot constitute substantial evidence. Ms. Chen is deserving of and entitled to relief under statutes that, as one court put it, provide refuge to desperate refugees who reach our shores with nowhere else to turn. It would be unfair for the adverse credibility determination on Ms. Chen's political opinion ground to taint her religious persecution claim, which is undisputed. It is undisputed that Ms. Chen belonged to an unsanctioned home Christian church, that Chinese authorities raided her church in 2005 and arrested her. It is undisputed that she was detained, interrogated, and abused during her detention, forced to renounce her religious practice, forced to renounce herself from her church, and report to the police weekly for questioning and hard labor. It is also undisputed that after Ms. Chen left her family and fled to the United States, authorities continued inquiring with her husband and her son as to her whereabouts. Nonetheless, the immigration judge and the Board of Immigration Appeals determined that Ms. Chen was not entitled to relief because they found she was inconsistent regarding whether she was actively breastfeeding her child 20 years before this incident or whether her abortion at State hands had occurred in October 1986 or a few months earlier. That is not supported by the law. Under Temeng, this Court has recognized that even when an adverse credibility determination goes to a past persecution claim, this Court may still review the future persecution claim without the taint of that adverse credibility determination. And that's what we would ask the Court to do here similarly. We can't do that if the BIA didn't do that, though. The BIA did not specifically say whether it had made an adverse credibility determination that tainted the whole proceeding. The BIA said that she was not credible regarding her political opinion claim and therefore had not reached her burden. The Second, Third, and Seventh Circuits have all recognized that when an adverse credibility determination applies to one ground for relief, it doesn't necessarily infect the other grounds for relief. And this Court has ruled similarly that we look at the difference between falsehoods and inconsistencies on the record. We have several cases that say if you are found not credible on one claim in asylum, that it can be transferred or applied to all other claims. Yes. So apart from what the other circuits say, how do we square your position with ours? I think the Ninth Circuit precedent, specifically in Lee v. Holder, has looked specifically at the nature of what the adverse credibility determination was. In Lee, this Court recognized that when an adverse credibility determination stems from material and conscious falsehoods, then an immigration judge or the BIA would be reasonable in applying that to other grounds for relief. Here, no one has submitted that Ms. Chen issued material and conscious falsehoods. The BIA, the IJ, and the government are all consistent in talking about her inconsistencies. Lee also recognizes that a witness could be mistaken but still be credible, and that's what we think the situation is here. Ginsburg. So just to be clear, the adverse credibility finding, you think, would have to say that it's material? That it was material or that it was a falsehood as opposed to a mistake or an error. The facts here show that Ms. Chen testified was testifying regarding whether she was actively breastfeeding her child in 1986 when she had a birth control device implanted by the government. And there's a dispute regarding whether she was in truth breastfeeding at that time or whether it was something that she told the government in hopes to avoid the procedure she was about to undergo. Well, the fact, here's my concern. Maybe you can allay it. She's all over the map, basically. And then the IJ says, well, I look at the demeanor, and then I look at this. Well, maybe I wasn't really breastfeeding because I was trying to convince him I was. But then this was the sequence. And in part, it might not have really mattered, but it is fundamental to her theory, and she doesn't seem to land in one place. So that's why it seemed to me was the basis for the IJ's finding. Why was that a mistake? Because it's unreasonable to look at Ms. Chen's testimony and see that or consider it an attempt to enhance her claims. Consider two Petitioners who both testified regarding religious persecution and a political opinion issue. One testified that she was actively breastfeeding during these events that happened to her, and the other testified that she wasn't breastfeeding. Neither of those applicants would be more likely to succeed before this Court, the IJ or the BIA. Well, it doesn't have to do with breastfeeding. It has to do with whether her whole story hangs together. I mean, that's really the point. It didn't – I don't think it's the whether she was breastfeeding or not. It's that she had a story that was weaving a bit in and out as to the timing and the facts surrounding the abortion issue. So if – was the IJ permitted to make a credibility determination on that basis? I know. The IJ is entitled to make a credibility determination based on his perception of the witness. However, the grounds that the IJ cited were not that her story kept going back and forth. Well, the grounds that he cited were inconsistencies before we – between what she said in writing in her application and what she said under oath in front of him. Isn't he entitled to try to understand whether the inconsistencies suggest that there's a credibility problem here, especially since there are three separate inconsistencies that have at least been identified? Yes, Your Honor. The inconsistency that was identified between her breastfeeding history is certainly something that the immigration judge could consider. But under the law, if that inconsistency is manifestly trivial to her relief, then it's not appropriate to ask. Well, it certainly wasn't manifestly trivial either to him or to her in terms of the disparity between what was said before and what was said during the testimony. Your Honor, I'd submit that it's similar to the case in Gang Wang, which we submitted to this Court via 28J. There, the Petitioner could not remember what he had been wearing the day that he was arrested. He also could not remember what his captors looked like. And the Court found that those sorts of inconsistencies were manifestly trivial. Further, these events happened more than 22 years before Ms. Chen's testimony before the IJ, and thus it is reasonable to understand that she may make some mistakes regarding her testimony. Finally, we would dispute that there were multiple inconsistencies on the record. Counsel, just let me stop you there. You're citing in the 28J letter Gang Wang? Yes, sir. Yes, Your Honor. That is an unpublished decision, is it not? It is, Your Honor. But it's a precedential in this Court? It's not binding, but it certainly is advisory. I notice that I'm running low on time, so with the Court's indulgence, I'd reserve the remainder of my time for rebuttal. You may do so, counsel. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Jeanette Allen for Respondent, the Attorney General. Ms. Allen. The only issue before the Court today is whether the record compels the conclusion that Ms. Chen was credible. The agency offered specific and cogent reasons for its adverse credibility determination, including instances in which her testimony was internally inconsistent and inconsistent with her written statement regarding central events underlying her claim of past persecution. The agency also determined that Ms. Chen had not submitted any evidence to corroborate this incredible testimony. In other words, her testimony. Let me ask you about that. At the end of the hearing, the I.J. notes that no documents were presented. And under Real ID Act, of course, the I.J. can request corroboration. But it was unclear to me whether or not she was on notice that the I.J. was requiring documentation. Was she afforded notice? Well, Your Honor, this Court's case law in Wren. I'm asking you. Factual question, not about our case law. Okay. So is your answer no, she wasn't afforded the opportunity to corroborate? Not under the specific procedures that this Court has held apply when an individual is deemed to be credible. Therefore, we have to reverse and remand? No, Your Honor. Actually, the Court's precedent is very clear that under 8 U.S.C. 1158. Well, let's talk about Wren. Sure. Is that Wren the precedent you're talking about? Yes. Wren interprets a statutory provision that discusses when an I.J. may require corroborating evidence for otherwise credible testimony. Those are the key words there, otherwise credible. Ms. Chen was not otherwise credible. As Your Honor's pointed out, she was inconsistent regarding the central events underlying her claim of past prosecution. I'm not disagreeing with you on that, but it seems to me that even in a case like this where there's a negative credibility finding, if a person, you can't fault an applicant for not providing documentation unless you give them the opportunity to do that, I'm not saying that the other reason may or may not hang together in terms of your appeal. The corroboration here really plays more of a role as far as whether she, whether the evidence in the record could rehabilitate what was already inconsistent and incredible. In this case, the Court considered the record as a whole as it is required to do under the statute. It's required to consider a totality of the circumstances, which includes assessing whether there's any evidence in the record that might reveal that the identified inconsistencies are not really inconsistencies at all. In this case, there was no evidence to show that these were not really inconsistencies at all. So I would argue that the immigration judge and the board were considering the totality of the circumstances in examining the record and noting that while Ms. Chen testified that she was arrested and mistreated on account of her involvement in a house church, there was no evidence in the record to support that claim. Despite the fact that she submitted a letter from her son and her husband, no mention in the letter is made of her involvement in the house church, her alleged arrest, her alleged 10-day detention, or the fact that her husband allegedly bailed her out. If this is a letter from her husband and her son, one would think that the letter might mention those events. What about the level of the inconsistency? Your counsel for Ms. Chen says it's really trivial whether or not the abortion and the IUD, whether it was October or a month or two before, you know, she's got the year. We're talking 20 years of past experience. Why does it matter if we have, you know, one month or another month? Well, because it goes to the central events underlying her claim of past persecution. It's not a trivial detail that the inconsistency regards. The inconsistency relates to the very events that are supposed to support her claim of past persecution. And I would note that especially the inconsistency regarding whether she was breastfeeding or whether she merely told the officials that she was breastfeeding in order to avoid the insertion of the IUD does in fact relate very specifically to the standards for supporting a claim of refugee status on account of the insertion of an IUD. While the statute provides for refugee status for one who has undergone a forced abortion or forced sterilization, in the context of an IUD, Ms. Chen would have had to show that she fit into the portion of the statute that requires other resistance to a coercive population control program. So her statements to the officers certainly relate to whether she resisted and what form that resistance took and would have been directly relevant to the elements to support a claim of refugee status on account of the insertion of an IUD. So that was not manifestly trivial, nor was the chronology of events. Ms. Chen gave inconsistent testimony. She, in her brief, she argues that there's really no way to interpret this other than she repeatedly said, I was breastfeeding at the time that the IUD was inserted. But that's simply not true. On page 124 of the record, she states, I stopped breastfeeding, then I was, I underwent an abortion, and then the IUD was inserted. This is directly inconsistent with her written statement that says I was breastfeeding at the time that the IUD was inserted. And as the immigration judge noted, when he was in the best position to make this assessment of her demeanor is supported in the record, as, in fact, she fluctuates so much, I'm not really sure what her final story was with regard to the insertion of the IUD. Because Ms. Chen offered multiple inconsistencies in support of her claim of past persecution, the agency properly determined that she was not credible. This was bolstered by their examination of the totality of the circumstances in the record, which failed to rehabilitate that incredible testimony. Regarding Ms. Chen's allegation that the board could not, that the board accepted her testimony of her involvement in the house church, that is simply not true. Ms. Chen was required to show that she was a credible applicant, not each claim examined independently. The statute states that the applicant must be credible. This, the agency determined that she, as an applicant and as a witness, was simply not believable. And in Lee v. Holder, as Ms. Chen pointed out, this Court did uphold the doctrine of falsus in uno, falsus in omnibus. But it does have to be a falsehood. Yes, it has to be material, and the government argues that this was, in fact, a material inconsistency and falsehood regarding her claims. If there are no further questions. No further questions. Thank you, counsel. Ms. Clare, you have some reserve time. Thank you, Your Honor. First, regarding the documentary evidence issue and whether Ms. Chen should have produced additional evidence, it's highly speculative to suggest what should have been in the evidence that she presented. Well, perhaps the IJA was giving her a chance to rehabilitate herself. She didn't perform very well in the proceeding. If that was the case, then the proper procedure under Wren would have been to ask her for corroborative evidence, in addition to her medical records showing the IUD and the other evidence that she presented. To say what the evidence should have been is the reason why we have these procedures in the first place. But what about opposing counsel's suggestion that here we have the situation where the inclination is that the Petitioner is incredible? In that situation. He's not asking for corroboration for credible testimony. The BIA has them as alternative holdings, so we read that to mean that the BIA was saying she was not credible, but even if she were, she didn't have the proper evidence. If this Court agrees that she was credible but did not, still did not meet her burden through testimony alone, then the proper procedure under Wren would be to give her the opportunity to do so or to explain why she could not. Regarding the inconsistencies themselves, when Ms. Chen testified on page 124 via translator, I was kind of out of milk. That is not a material falsehood that warrants denial of her claim. I see I'm out of time, but if the Court has any questions, otherwise, I thank the Court. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown